UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM J. MCELROY,<br><br>        Plaintiff,<br><br>    v.<br><br>VITALANT,<br><br>        Defendant. | Case No. 25-cv-02996-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE** |

Kim McElroy, on behalf of herself and a putative class of similarly situated individuals, sued Vitalant, her former employer, for eleven violations of the California Labor Code and the California Business and Professions Code. Vitalant's motion for judgment on the pleadings was granted, with leave to amend, because McElroy's First Amended Complaint (FAC) failed to allege facts sufficient to make any of the asserted violations plausible. Vitalant now moves to dismiss McElroy's Second Amended Complaint (SAC) under Rule 12(b)(6) and to strike the class action averments under Rule 12(f).

The amendments to the complaint push only one substantive claim across the line of plausibility: her claim for failure to pay all wages due in cash on demand (claim nine). That claim can only be prosecuted as a representative action under the California Private Attorneys General Act (PAGA) because the substantive statute, California Labor Code § 212(a), does not provide a private right of action. McElroy's other substantive claims remain deficiently pleaded. Therefore, Vitalant's motion to dismiss is denied as to McElroy's request to prosecute a PAGA claim for

failure to pay all wages due in cash, but it is otherwise granted. McElroy is given leave to amend her dismissed claims, save the three she chose not to amend in the SAC—those for failure to pay for time spent waiting to be assigned work (claim four), failure to pay vacation wages (claim five), and failure to indemnify for business expenses (claim eight)—and her claim for unfair competition (claim ten), which cannot be maintained under principles of equity and standing.

Vitalant's motion to strike is denied. Though the class action averments are extremely thin, the Ninth Circuit has admonished that Rule 12(f) should not be used to dismiss portions of a complaint. Rather, a defendant's argument that the requirements of Rule 23 are not satisfied is best ventilated through the class certification process. *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 211796, at *14 (N.D. Cal. May 26, 2011).

# I. BACKGROUND

Kim McElroy is a former employee of Vitalant, a nonprofit blood donation organization. On behalf of herself and others similarly situated, McElroy sued Vitalant in California state court, asserting eleven causes of action under various California wage and hour laws. *See* Dkt. 1, Ex. E (FAC). After answering McElroy's amended complaint, Vitalant removed the case to federal district court under the Class Action Fairness Act, 28 U.S.C. § 1453. *See* Dkt. 1.

Vitalant moved for judgment on the pleadings or, in the alternative, to strike the class action averments. *See* Dkt. 19. The former motion was granted because McElroy failed plausibly to aver that Vitalant committed any legal violations. *See* Dkt. 25. Specifically, McElroy's meal and rest break claims (claims one and two) were dismissed because the FAC was "devoid of any detail that would make plausible her claim that Vitalant systematically denied her and the putative class members meal and rest breaks." *Id.*, at 3. McElroy did not identify any specific instance in which a meal or rest break was denied, how often it happened, or who prevented her from taking a break. *See id.*

McElroy's claims for failure to pay minimum and overtime wages (claim three) suffered from similar defects. Her FAC did not adequately aver that the off-the-clock work she was allegedly asked to perform caused her to work more than 40 hours in a week because it omitted

ORDER GRANTING MOTION TO DISMISS
CASE NO. 25-cv-02996-RS

2

"any detail regarding the extra work—such as how often it was required and how long it took." *Id.*, at 4; *see id.* (determining that the minimum wage claim could not proceed because the complaint "fails to provide any detail about when or for how long [McElroy] was required to perform [the uncompensated] tasks").

      McElroy also brought four claims premised on the existence of an illegal policy: failure to pay for time spent waiting to be assigned work (claim four), failure to pay vacation wages (claim five), failure to indemnify for business expenses (claim eight), and failure to pay wages due in cash on demand (claim nine). Claims four, five, and eight fell short because McElroy merely averred the existence of the illegal policy without offering specific facts that substantiated the policy's existence. *See* Dkt. 25, at 5 ("It may be, as McElroy argues, that she need only allege that Vitalant had an illegal policy that she was subject to, but she nonetheless needs to substantiate that allegation with specific facts that make the existence of that policy and its application to her plausible instead of just possible."). Claim nine was insufficiently pleaded because, while McElroy averred that Vitalant paid its employees with pay cards that were usable only for a fee, she did not aver that *she* was ever denied the opportunity to access her wages without charge. *See id.*, at 6.

      Finally, McElroy asserted four claims that were derivative of her substantive wage and hour claims: failure to provide accurate written wage statements (claim six), failure to pay all final wages in a timely manner (claim seven), unfair competition (claim ten), and a representative claim under the Private Attorney Generals Act, Lab. Code §§ 2698, *et. seq*. (claim eleven). Those claims all failed because the predicate claims failed. McElroy's motion to strike was denied as moot.

      McElroy was given 21 days to file a SAC addressing these deficiencies. She did so on October 23, 2025—three days after the deadline. *See* Dkt. 26. Vitalant promptly moved to dismiss for failure to state a claim, arguing that McElroy's SAC failed to cure the problems that doomed her original submission. Dkt. 27 (Mot.); Fed. R. Civ. P. 12(b)(6). It again moved to strike the class averments in the alternative.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory statements or formulaic recitations of the elements of a claim are not sufficient. *See Chavez*, 683 F.3d at 1108. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Assessing facial plausibility is a context-sensitive task that requires judicial experience and common sense. *Id.* at 679.

Under Rule 12(f), "any redundant, immaterial, impertinent, or scandalous matter" may be stricken from a complaint. "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145–46 (N.D. Cal. 2010).

## III. DISCUSSION

A. <u>Timeliness</u>

Vitalant first argues that its motion should be granted because McElroy filed her SAC three days late. It characterizes McElroy as having "flouted the Court's order" and undermined the expeditious resolution of this case. *See* Mot., at 1. It also contends that it enjoys a presumption of prejudice from McElroy's tardy submission and that this presumption has not been rebutted because McElroy has not offered any excuse for why the amended complaint came late. *See id.*

Court-imposed deadlines are important. Litigants and lawyers that wish to maximize their chances of success are admonished to comply with them. However, this relatively minor transgression does not warrant dismissal. Despite its assertion to the contrary, Vitalant does not seem to have been prejudiced by McElroy's failure to comply with the deadline. It filed a motion to dismiss two weeks after the SAC came in, and as will become apparent below, that motion was well-crafted and persuasive. Moreover, McElroy's SAC is substantially the same as her FAC. That

is to McElroy's detriment on the merits of Vitalant's motion, but it means that Vitalant was well-equipped to deal with the complaint whenever it was filed.

B. Motion to Dismiss

    *i.*    *Claims One and Two: Failure to Provide Meal and Rest Periods*

McElroy avers that Vitalant violated California law by requiring her and the putative class members to work more than five hours per day without providing a 30-minute meal period and to work more than four hours without permitting a ten-minute rest period. *See* Cal. Lab. Code §§ 226.7, 512(a). In her FAC, McElroy averred that Vitalant had a "common policy and practice" of denying her and the putative class members breaks "due to understaffing, heavy workloads, and uncompensated pre-shift duties," which included Covid-19 testing and vaccinations and required communications with superiors. *See* FAC ¶¶ 20, 24.

Judgment on the pleadings was granted as to these claims because the FAC was devoid of any detail to substantiate the averments—it did not "identify a single, specific instance in which she was denied a meal or rest break, nor [did it] detail how often she was denied the breaks, or what she was required to do during the time she should have been given off." Dkt. 25, at 3. To remedy that failing, McElroy has added the following averment to her SAC:

> Moreover, Plaintiff was required to self-screen for COVID-related symptoms prior to clocking into work, this included taking her own temperature, complete a detailed questionnaire, and, if necessary, call Defendant's COVID Hotline for further instructions.

SAC ¶¶ 47, 61 (meal and rest break claims, respectively). This is not enough. At best this added "detail" identifies what McElroy "was required to do during the time she should have been given off." Dkt. 25, at 3. Her theory is now clear: Her COVID-related obligations started the clock on her workday earlier, so she earned breaks earlier than she otherwise would have. It does not, however, push the averments across the line of plausibility. They do not—as the order granting Vitalant's motion for judgement on the pleadings required—(1) identify a single, *specific* instance in which this "work" was required, (2) say how often it was required, or (3) say who required it. Without those details, McElroy's assertion that Vitalant is liable for a violation of California wage

and hour law remains too speculative to proceed.

McElroy relies on several non-binding district court decisions, but none establish that she met the pleading burden. In *Ambriz v. Coca Cola Co.*, the district court permitted meal and rest break claims to proceed where the plaintiff merely alleged that the defendant denied him meal and rest breaks and had a policy of doing the same to the putative class members. 2013 WL 5947010, at *3 (N.D. Cal. Nov. 5, 2013). That was enough, the district court explained, because there was no way to "allege the non-existence of something . . . with any greater specificity than [the plaintiff did] [t]here." *Id.*, at *4. Where the allegation is that an employer failed to provide *any* breaks to its employees, perhaps that is right. McElroy's theory, by contrast, is amenable to much greater specificity. She could have explained how long those COVID-related tasks took, when she performed them, and when she was given a break. Indeed, at present, McElroy's SAC is missing the core of a meal and rest break claim: an averment that someone *prevented* her from taking a break. She avers, in essence, that she started her day earlier because of the COVID-related tasks and that this "caused" her to take breaks after she had worked five hours in a day, but how exactly it did so is left unexplained.

McElroy also points to *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, 2022 WL 411422, at *5 (E.D. Cal. Feb. 10, 2022), but that case merely proves the deficiency of her claims. There, the plaintiffs' original meal and rest break claims were dismissed because they "failed to identify any specific instance(s) where they were deprived of meal or rest breaks." *Id.* The plaintiffs amended their complaint by "provid[ing] specific instances in which rest breaks were not fully taken" and at least "five instances when [one plaintiff] was not provided a meal break at all." *Id.* The detail in these new averments was sufficiently granular to make the asserted legal violation plausible. For example, one plaintiff averred that he "took a 26[-]minute meal break for a shift over seven hours and did not take full rest breaks due to walking between work stations and rest break areas." *Id.* Another identified the specific dates on which he was denied meal breaks. *See id.* McElroy provides nothing remotely comparable.

McElroy's reliance on *Perez v. Island Hospital Management III, LLC*. 2019 WL 3064113,

at *3 (C.D. Cal. Feb. 8, 2019), is similarly misplaced. While it is true that that plaintiff, like McElroy, pointed to "understaffing" and a "heavy workload" as the cause of the missed breaks, he provided much more detail about how and when those causes manifested in legal violations. *See id.* The plaintiff averred "that understaffing prevented him from taking a rest break 'approximately once a week' and that the meal breaks he took were interrupted by hotel guests 'frequently' or 'approximately three to four times week.'" *Id.* Though the plaintiff did not give a precise date, the frequency with which he alleged this occurred made it clear that the violations were basically continuous. Here, by contrast, McElroy seems to say there were discrete instances of her being required to conduct COVID-related tasks. If that is true, she should be able to say specifically when those instances occurred. If that is not true, she should—like the plaintiff in *Island Hospital Management*—be able to say with what frequency she was denied timely breaks. McElroy is given one more chance to satisfy her pleading burden on these claims.

> ii.   Claim Three: Failure to Pay Hourly and Overtime Wages

McElroy avers that Vitalant did not pay her for the time spent completing her COVID-related tasks, which resulted in her being denied hourly wages and overtime wages.[1] Judgment on the pleadings was granted on this claim because McElroy failed to meet her pleading burden under the Ninth Circuit's decision in *Landers v. Quality Communication, Inc.*, 771 F.3d 638 (9th Cir. 2014).[2] Namely, she did not adequately aver "that she worked more than forty hours in a given

---

[1] Though the SAC is somewhat unclear on this point, McElroy does not appear to aver that Vitalant directly violated the law by not paying her for the time spent performing these COVID-related tasks. Indeed, that claim would sound more in breach of contract. Her theory appears to be that the COVID-related tasks increased her total hours worked to a point where her effective wage (the total paid divided by hours worked) fell below the legal minimum wage. *See* SAC ¶ 81 ("This uncompensated time caused Plaintiff and the Hourly Employee Class members to work in excess of eight (8), ten (10), and twelve (12) hours a day and/or forty (40) hours a week, entitling [them] to minimum and overtime wages.").

[2] McElroy offers a passing argument that *Landers* does not apply because it involved the federal Fair Labor Standards Act, not the California wage and hour laws. *See* 771 F.3d at 639. That distinction is unimportant. The Ninth Circuit derived the pleading standard from Federal Rule of Civil Procedure 8 and Supreme Court gloss on that Rule. *See id.* at 640. Therefore, this standard applies in federal court even though the underlying cause of action comes from state law. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010).

1    workweek without being compensated for the overtime hours worked during that workweek." *Id.*

2    at 644–45. To remedy that failure, McElroy added the following allegation to the SAC:

> As an example, Plaintiff was required to undergo mandatory vaccinations on 10/10/22. Plaintiff worked in excess of 40 hours [per] week for the pay period beginning on 10/9/2022 and ending on 10/22/2022. As such, the uncompensated off-the-clock work, discussed above, including the mandatory vaccinations, all result in not only unpaid minimum wages, but unpaid overtime wages as well.

SAC ¶ 82. McElroy continues to misunderstand her burden under *Landers*, and consequently, her averments continue to fall short. Under *Landers*, she must aver *facts* that make plausible that she worked more than forty hours in a particular workweek. *See Landers*, 771 F.3d at 645 ("A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility."). As the Ninth Circuit there explained, more specific facts move the complaint close to the plausibility threshold. *See id.*

All McElroy has provided is one date and one allegedly off-the-clock task. There is no way to know whether that task caused her to work more than forty hours in a week without more. For example, how many hours did she work excluding the COVID vaccination? How long did the vaccination take? What was her hourly wage during that period? Correspondingly, what was her effective hourly wage assuming she was entitled to be paid for the time spent getting vaccinated? The SAC has no answers.

Perhaps recognizing the thinness of her averments, McElroy argues that *Landers* does not require her to identify a particular instance in which she was denied minimum or overtime wages. In her view, it requires only that she plead facts that give rise to a plausible inference that such an instance occurred. *See Saunders v. Ameriprise Fin. Servs., Inc.*, 2019 WL 4344296, at *5 (C.D. Cal. Mar. 19, 2019). To be sure, the scope of a wage-and-hour plaintiff's pleading burden after *Landers* has been the subject of considerable debate among district courts. There is no need to wade into that debate here, though, because McElroy has not even pleaded facts that give rise to a plausible inference that she was denied minimum or overtime wages in a particular week. It is

ORDER GRANTING MOTION TO DISMISS
CASE NO. 25-cv-02996-RS

*possible* that the time she spent getting vaccinated pushed the hours she worked during the week including October 10, 2022, above forty—but it is not *plausible*. If McElroy otherwise worked less than forty hours and the time spent getting vaccinated was not significant, it is also *possible* that she did not work more than forty hours that week. Without any detail about her work schedule or wages, there is simply no way to tell if she is entitled to relief on the facts averred. McElroy is given one final chance to amend her complaint to fix this deficiency.

          *iii.*    *Unamended Claims*

McElroy brings claims for failure to pay for time spent waiting to be assigned work (claim four), failure to pay vacation wages (claim five), and failure to indemnify for business expenses (claim eight). Judgment on the pleadings was granted as to those claims because McElroy merely averred that Vitalant maintained illegal policies to which she was subjected; she did not plead facts that substantiated the existence of those policies. Her failure to plead sufficient facts, the order explained, appeared to stem from a "misunderstanding of her pleading burden." Dkt. 25, at 5.

That misunderstanding persists. McElroy made no changes to these claims. Instead, she appears to argue that they were adequately plead all along. Indeed—at least as to the failure to indemnify claim—she claims to be "unsure what additional facts can be added at this point." Dkt. 29, at 11.

The answer to this confusion, of course, can be found in the order granting Vitalant's motion for judgment on the pleadings. That order explained that "McElroy fail[ed] to identify a single instance in which she incurred [business] expenses at Vitalant's direction." Dkt. 25, at 6. Providing specific instances in which someone at Vitalant either told McElroy to use her personal cell phone for work duties or instructed her to buy additional supplies with her own money would have substantiated the general allegation that Vitalant had such a policy. Without it, McElroy's averments remain fatally deficient. Because McElroy chose not to avail herself of the prior opportunity to amend these claims, they are dismissed without leave to amend.

*iv.     Claim Nine: Failure to Pay All Wages in Cash on Demand*

McElroy brings a claim under California Labor Code § 212(a) for failure to pay all wages in cash on demand. Specifically, she avers she and other Vitalant employees were paid with "pay cards" that they could not use for free. Vitalant's motion for judgment on the pleadings was granted on this claim because McElroy did not aver "that *she* was ever denied the opportunity to access her wages for free." Dkt. 25, at 6 (emphasis in original). Her SAC now includes one line addressing that deficiency: "Specifically, Plaintiff was charged a fee for using this company-issued pay card to access her wages owed." SAC ¶ 38.

This amendment aside, Vitalant argues that section 212(a) does not contain a private right of action. Section 212(a) provides that "[n]o person, or agent or officer thereof, shall issue in payment of wages due, or to become due, or as an advance on wages to be earned: Any order, check, draft, note, memorandum, or other acknowledgement of indebtedness, unless it is negotiable and payable in cash, on demand, without discount . . ." In California, "[a]doption of a regulatory statute does not automatically create a private right to sue for damages resulting from violations of the statute. Such a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature intended to create such a right to sue for damages." *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.,* 70 Cal.App.4th 55, 62 (1999). As other courts have recognized, section 212(a) merely proscribes conduct, it does not "clearly indicate[]" that the legislature intended to create a right to bring a lawsuit. *See Gunawan v. Howroyd-Wright Emp. Agency*, 997 F. Supp. 2d 1058, 1068 (C.D. Cal. 2014). Therefore, McElroy's individual failure to pay claim is dismissed without leave to amend.

However, McElroy also seeks to prosecute a representative PAGA action for Vitalant's alleged violation of section 212(a). *See* FAC ¶ 143. Under PAGA, "any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . may, as an alternative, be recovered by an aggrieved employee on behalf of himself or herself and current or former employees." Cal. Lab. Code § 2699(a). Section 225.5 of the Labor Code provides that "every person who unlawfully withholds wages due any

employee in violation of Section 212 . . . shall be subject to a civil penalty." That civil penalty is "recovered by the Labor Commissioner" and "paid into a fund within the Labor and Workforce Development Agency." *Id.* § 225.5. Therefore, McElroy can maintain a PAGA action premised on a well-pleaded violation of section 212(a).

That PAGA claim can proceed because, though close, McElroy's claim now adequately avers a violation of section 212(a). As noted, the order granting Vitalant's motion for judgment on the pleadings faulted McElroy for failing to aver that *she* was charged a fee for using her pay card. She has now done just that. Vitalant points out that an employer does not violate section 212(a) if it provides at least one opportunity per pay period to use a pay card for free, and it argues that the SAC is deficient because McElroy did not specifically aver that Vitalant denied her one such opportunity. However, that is precisely what the SAC can be interpreted to say. McElroy avers that the pay cards "were useable for a fee and did not have a provision for use and payment in California at no cost to the employee." SAC ¶ 38. If the pay card literally would not work without a fee, it is unclear how McElroy could have been afforded even the single opportunity to use it for free that California law guarantees her.

To be sure, this averment could—and perhaps should—have more detail. McElroy could have averred the frequency with which she was paid with a pay card, how much the alleged fee was, and where she tried to use it only to be asked to pay for a fee. However, as opposed to other claims in this case, the failure to provide those details does not introduce the possibility that Vitalant acted legally. Section 212(a) is very straightforward—an employer must provide an employee one chance per pay period to access her wages for free. McElroy's averment is that Vitalant did not do that, so it can proceed as a PAGA claim.

    *v.*  *Derivative Claims*

As previously explained, McElroy brings three claims that she concedes depend on well-pleaded substantive wage and hour claims: (1) failure to provide accurate written wage statements (claim six), (2) failure to pay timely all final wages (claim seven), and (3) "unfair competition" (claim ten). Claims six and seven depend on the substantive failure to pay minimum and overtime

wages claim (claim three). That is because, as explained in the prior order on the motion for judgment on the pleadings, there is no failure to itemize minimum and overtime wages that the employer was never obligated to pay. Similarly, there can be no liability for late payment of minimum and overtime wages that the employer never owed. Because claim three may still be revived in a third amended complaint and claims six and seven rise and fall with claim three, claims six and seven are also dismissed with leave to amend.

However, McElroy's unfair competition claim cannot be revived. Horizontal choice-of-law principles require that federal courts exercising subject-matter jurisdiction over state law claims apply federal common law to determine the availability of equitable remedies. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020). In her unfair competition claim, McElroy seeks "the issuance of temporary, preliminary and permanent injunctive relief enjoining [Vitalant] . . . from further violations of the Labor Code and applicable Wage Orders" as well as "declaratory relief and restitution of all monies rightfully belonging to [the putative class members] that [Vitalant] did not pay them or otherwise retained by means of its unlawful and unfair business practices." SAC ¶¶ 137, 139. The parties agree that those are classical equitable remedies.

McElroy cannot seek either remedy. As to the latter, she has not shown that she lacks an adequate remedy at law, a prerequisite of securing equitable relief in federal court. *See Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law . . . " (quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992))). McElroy's request for equitable restitution is completely duplicative of her request for damages in the substantive wage and hour claims on which the unfair competition claim depends—both simply ask for the money lost. In her papers, McElroy hardly even attempts to explain what relief restitution would provide that damages would not.

McElroy focuses, instead, on explaining why *injunctive* relief would give the putative class something that damages cannot. Namely, she says that injunctive relief is necessary because many

of the putative class members are current employees of Vitalant, and damages cannot ameliorate the future violations Vitalant may commit. That may be so, but McElroy has no standing to ask for that relief because *she* is not a current employee of Vitalant. Said otherwise, McElroy will not be injured by Vitalant's future unlawfulness, and thus she cannot maintain a prospective claim consistent with Article III of the Constitution. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) (explaining, in a workplace discrimination suit, that "only current employees have standing to seek injunctive relief"). There is no conceivable way these defects could be remedied, so McElroy's unfair competition claim is dismissed without leave to amend.

McElroy's final claim is for civil penalties under PAGA. As explained, only McElroy's claim for failure to pay all wages in cash on demand (claim nine) was sufficiently pleaded, and that claim can only be maintained as a PAGA action. To the extent McElroy can revive any of her substantive wage and hour claims in a third amended complaint, she can reallege entitlement to prosecute them as a PAGA claim as well. Therefore, the PAGA claim is dismissed without leave to amend insofar as it relates to underlying claims dismissed without leave to amend (claims four, five, eight, nine as an individual or class claim, and ten), and it is dismissed with leave to amend insofar as it relates to underlying claims dismissed with leave to amend (claims one, two, three, six, and seven).

C.  Motion to Strike

Vitalant moves to strike McElroy's class action averments. Because not every claim has been dismissed under Rule 12(b)(6), this motion is no longer moot. Vitalant argues that the class action averments should be stricken because they are merely boilerplate recitations of Rule 23's requirements devoid of any facts that make the maintenance of a class action plausible. As to numerosity, McElroy avers that she "is informed and believes, and thereupon alleges that the actual number [of potential class members] exceeds the minimum required for numerosity under California law." SAC ¶ 14. As to commonality and predominance, she identifies at least twelve common questions, all of which are some version of whether Vitalant maintained a policy and practice that violates California law. *Id.* ¶ 15. As to typicality, she says that her claims "are typical

of the other class members' claims." *Id.* ¶ 16. Finally, as to adequacy, she says that she "is an adequate class representative and has no interests that are adverse to, or otherwise conflict with, the interests of absent class members and is dedicating to prosecuting this action vigorously on their behalf. *Id.* ¶ 17.

Vitalant's critique of the class action averments have merit. However, "'[m]otions to strike are generally disfavored' and 'should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation.'" *Hill v. Pacific Maritime Association*, 2025 WL 1282628, at *5 (N.D. Cal. May 2, 2025) (quoting *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 755 (N.D. Cal. 2024)). Consequently, "courts in this District do not generally consider motions to strike class allegations at the pleadings stage," *id.*, and those that do grant the motion only if it is "convinced that any questions of law are clear and not in dispute[] and that under no set of circumstances could the [class action device] succeed." *In re Nexus 69 Prod. Liab. Litig.*, 296 F. Supp. 3d 888, 960–64 (N.D. Cal. 2018).

At this stage, it is not absolutely clear that the class device cannot succeed. Discovery may well reveal facts that demonstrate the requirements of Rule 23 can be satisfied. If no such facts emerge, Vitalant may renew these arguments in an opposition to class certification.

## IV. CONCLUSION

For the foregoing reasons, Vitalant's motion to dismiss is granted in part and denied in part. The motion is denied only as to the claim for failure to pay wages in cash on demand (claim nine) insofar as McElroy intends to prosecute that claim via PAGA. The claims for failure to provide meal and rest breaks (claims one and two) and for failure to pay overtime and minimum wages (claim three) are dismissed with leave to amend. The claims for failure to pay reporting time (claim four), for failure to pay vacation time (claim five), for failure to indemnify for business expenses (claim eight), for failure to pay wages in cash on demand insofar as it is asserted on an individual or class basis (claim nine), and for unfair competition (claim ten) are dismissed without leave to amend. The other derivative claims (claims six, seven, and eleven) can be revived to the extent they depend on claims for which McElroy is given leave to amend.

Finally, Vitalant's motion to strike is denied.

Any final amended complaint must be filed within 21 days of the date of this order.

**IT IS SO ORDERED**.

Dated: December 11, 2025

_____
RICHARD SEEBORG
Chief United States District Judge