UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIM J. MCELROY,

            Plaintiff,

    v.

VITALANT,

            Defendant.

Case No. 25-cv-02996-RS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**

Kim McElroy, on behalf of herself and a putative class of similarly situated individuals, sued Vitalant, her former employer, for a variety of wage and hour violations under California law. Vitalant moves to dismiss McElroy's Third Amended Complaint (TAC) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The motion is granted without further leave to amend.

### I. BACKGROUND

Kim McElroy is a former non-exempt employee of Vitalant, a nonprofit blood donation organization. *See* TAC ¶ 20. She sued Vitalant in California state court, bringing a variety of wage and hour claims under state law. Vitalant removed the case to federal court. *See* Dkt. 1 (Notice of Removal).

This is the third challenge to McElroy's pleadings. Vitalant's first motion (for judgment on the pleadings) was granted with leave to amend. *See* Dkt. 25. Its second motion (to dismiss) was granted in substantial part. *See* Dkt. 34. Only McElroy's claim for failure to pay all wages in cash on demand—to the extent prosecuted as a representative PAGA action—survived. *See id.* Her

claims for failure to provide meal breaks, failure to provide rest breaks, failure to pay overtime wages, and failure to pay minimum wages were dismissed with leave to amend. *See id.* Her claims that were derivative of those four claims were also dismissed with leave to amend and could be revived only insofar as the predicate claims were successfully repaired. *See id.* Finally, her claims for failure to pay reporting time, failure to pay vacation time, failure to indemnify for business expenses, and for failure to pay wages in cash on demand—to the extent prosecuted as an individual or class action—were dismissed without leave to amend. *See id.* McElroy filed a TAC, and Vitalant moves to dismiss again.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory statements or formulaic recitations of the elements of a claim are not sufficient. *See Chavez*, 683 F.3d at 1108. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Assessing facial plausibility is a context-sensitive task that requires judicial experience and common sense. *Id.* at 679.

## III. DISCUSSION

### i.    *Failure to Provide Meal and Rest Breaks*

McElroy avers that Vitalant forced her to undertake certain COVID-related obligations— such as testing, receiving vaccinations, and filling out health questionnaires—before her shift began. *See* TAC ¶ 21. Her theory is that these duties started the clock on her workday earlier, obligating Vitalant to provide meal and rest breaks earlier than it did. *See id.*

The order granting Vitalant's motion to dismiss explained that the averments in the Second Amended Complaint (SAC) were insufficient, in part, because they did not "(1) identify a single, specific instance in which this 'work' was required, (2) say how often it was required, or (3) say who required it." Dkt. 34, at 5. The TAC attempts to address those deficiencies. It avers, for

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
CASE No. 25-cv-02996-RS

2

United States District Court
Northern District of California

instance, that this happened during the week of October 10, 2022, and that the obligations were communicated through "Plaintiff's supervisor Vicki Mead and various Fast Track Team members." TAC ¶ 21. The TAC also estimates that these tasks took "anywhere between 10 to 15 minutes," and "caused Plaintiff and Class Members' meal periods to commence after the completion of their fifth hour of work." *Id.* ¶¶ 21, 26.

These details certainly make plausible that Vitalant required McElroy and the putative class members to do certain things before their shifts started, but they do not make plausible that Vitalant prevented McElroy and the putative class members from taking timely meal and rest breaks. The TAC is still devoid of any detail about the breaks themselves—for instance, for when they were originally scheduled and when they were ultimately taken. Indeed, the relatively minimal time that McElroy says these pre-shift COVID-related duties required means the meal and rest breaks would have been tardily provided *only if* they were originally at or near the last permissible moment. That is possible, but nothing in the TAC makes it plausible.

The remainder of McElroy's averments related to her meal and rest break claims fare no better. She continues to aver that "due to understaffing [and] heavy workloads," Vitalant denied her timely breaks. TAC ¶ 49. These broad averments are not enough. Understaffing and heavy workloads can only form the basis of a meal and rest break claim if they caused the defendant actively to deny the plaintiff timely breaks. Again, McElroy does not say when the breaks were scheduled, until when they were delayed, or who instructed her that she needed to work through the breaks to deal with the "understaffing [and] heavy workloads." TAC ¶ 49. Without this detail, her claim that Vitalant violated the meal and rest break provisions of the California Labor Code are not plausible. These claims are therefore dismissed. Because this is McElroy's third attempt to aver plausibly the meal and rest break claims, leave to amend is not appropriate.

ii.     *Failure to Pay Overtime and Minimum Wages*

McElroy advances a nearly identical theory in support of her failure to pay overtime and minimum wages claims. She avers that she was not paid for the COVID-related duties undertaken before her shift began. She claims that these responsibilities "caused" her to work more than 40

hours per week, entitling her to overtime. *See* TAC ¶¶ 86–87. For instance, she avers that she "worked in excess [of] 40 hours [per] week for the pay period beginning on 10/9/2022 and ending on 10/22/2022." TAC ¶ 87.

These averments fail to state a plausible claim for failure to pay minimum wages. To state a claim for minimum wages, McElroy must aver that the volume of uncompensated work caused her effective wage rate to fall below the legal minimum. To so demonstrate, McElroy must aver more specifically (1) the wage she was paid and (2) how many hours she worked in a typical week. That is especially so where, as here, the burden of uncompensated work is relatively small. *See* TAC ¶ 84 ("Plaintiff estimates that the foregoing testing process and procedure took anywhere between 10 to 15 minutes."). For Vitalant to have breached its obligation to pay minimum wages, McElroy either (1) would have had to work very few hours (such that this extra burden represents a meaningful share of her total hours worked) or (2) be paid a wage extremely close to the legal minimum (such that the small impact on her effective wage caused it to dip below the legal minimum). Perhaps one, or both, of those conditions were met, but the TAC does not do enough to make either plausible. McElroy's minimum wage claim is thus dismissed without leave to amend.

McElroy's claim for failure to pay overtime wages is closer. She avers that, during one pay period in October of 2022, she worked in excess of 40 hours per week and that she was not paid for the time spent carrying out the COVID-related responsibilities. If that is true, then she would be entitled to overtime pay.

However, it appears as though McElroy avers not that she worked more than 40 hours per week and then had additional duties thrust upon her, but rather that these duties *were the reason* she worked more than 40 hours during those weeks. *See* TAC ¶ 86 ("This uncompensated time *caused* Plaintiff and the Hourly Employee Class members to work in excess of eight (8), ten (10), and twelve (12) hours a day and/or forty hours a week.") (emphasis added). For that to be true, McElroy would have to have been scheduled to work fewer than 40 hours per week, but only slightly fewer. She averred that the COVID-related tasks took her ten to 15 minutes per day. Assuming she worked five days per week, that equates to between 50 and 75 minutes per week.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
CASE NO. 25-cv-02996-RS

Therefore, the COVID-related tasks only "caused" her to work more than 40 hours in a week if she was otherwise scheduled to work between 38 hours, 45 minutes (if the tasks took her 15 minutes per day) or 39 hours, 10 minutes (if the tasks took her 10 minutes per day) and 40 hours. If she otherwise worked less, the extra work would not get her above forty hours; if she otherwise worked more, the uncompensated work was not the "cause" of working more than 40 hours, as she averred. There is no way to know whether that is true, because the TAC contains no detail about McElroy's schedule during the week she claims to have worked more than 40 hours (or, indeed, any other week).

This conclusion should not be surprising to McElroy as it is precisely what both the order granting Vitalant's motion for judgment on the pleadings and the order granting Vitalant's motion to dismiss the SAC said. *See* Dkt. 25, at 4 ("While the complaint identifies off-the-clock work that could nudge the number of hours worked over the overtime threshold, the allegation that it did so is entirely conclusory."); Dkt. 34, at 34 ("It is *possible* that the time she spent getting vaccinated pushed the hours she worked during the week including October 10, 2022, above forty—but it is not plausible. If McElroy otherwise worked less than forty hours and the time spent getting vaccinated was not significant, it is also possible that she did not work more than forty hours that week. Without any detail about her work schedule or wages, there is simply no way to tell if she is entitled to relief on the facts averred.") (emphasis in original).

McElory has not heeded those admonitions. Her complaint is still devoid of any *facts* that would permit an inference that, as she avers, these COVID-related tasks caused her to work more than 40 hours in a given workweek. *See Landers v. Quality Comms. Inc.*, 771 F.3d 638, 646 (9th Cir. 2014). Though the Ninth Circuit has cautioned that "mathematical precision" is not required, *id.* (quoting *Dejesus v. HF Management Servs.*, LLC, 726 F.3d 85, 90 (2d Cir. 2013)), this degree of imprecision is fatal. McElroy's overtime claim is dismissed without leave to amend.

### iii.    Remaining Claims

McElroy brings three additional claims: (1) failure to provide accurate written wage statements; (2) failure to pay all wages timely; and (3) a claim for civil penalties under PAGA.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
CASE NO. 25-cv-02996-RS

5

United States District Court
Northern District of California

The parties agree that these claims are almost entirely derivative of the claims for failure to provide meal and rest breaks and failure to pay minimum and overtime wages, so they are dismissed without leave to amend as well.

McElroy argues that she has an independent basis for the first of those claims, namely that Vitalant violated section 226(a)(8) of the Labor code by failing to state the name and address of the employer's legal entity on the wage statement. *See* TAC ¶ 96; Cal. Labor Code § 226(a)(8) (requiring an employer to furnish a wage statement with "the name and address of the legal entity that is the employer"). McElroy provides no factual averments to support this claim, nor does she explain how she was injured by this alleged omission. The claims are denied without leave to amend.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in full without leave to amend as any further amendment, at this juncture, would be futile.

**IT IS SO ORDERED**.

Dated: March 3, 2026

RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
CASE NO. 25-cv-02996-RS

6